**UNITED STATES v. KREMEN.**

**UNITED STATES v. STEINBERG.**

**UNITED STATES v. CONROY.**

**UNITED STATES v. RASI.**

**UNITED STATES v. COLEMAN.**

**Civ. Nos. 7691–7695.**

United States District Court
N. D. California, S. D.
Sept. 14, 1953.

Lloyd H. Burke, U. S. Atty. Northern District of California, San Francisco, Cal., for plaintiff.

Richard Gladstein, San Francisco, Cal., Gladstein, Andersen & Leonard, San Francisco, Cal., for defendants.

OLIVER J. CARTER, District Judge.

Motions for reduction of bail fixed by United States Commissioners[1] have been made by each of the five defendants charged with a violation of the same statute in complaints filed with the respective Commissioners. The bail fixed in each case by the Commissioners is $35,000. In addition the defendant Steinberg moves to reduce bail fixed in the sum of $100,000 by the Commissioner on removal proceedings

1. The defendants Kremen, Rasi, Coleman and Steinberg were charged before and bail was fixed by United States Commissioner Karesh at San Francisco, California. The defendant Conroy was charged before and bail was fixed by United States Commissioner Hammond at Stockton, California.

based on a pending indictment returned in the Southern District of New York charging him with conspiring to violate the Smith Act.[2] All of the defendants except Steinberg are charged with a violation of 18 U.S.C. § 3[3] in that each one of them, "knowing that an offense, to wit, a violation of Title 18 U.S.Code, Section 10, 1946 Edition, and Title 18 U.S.Code, Section 2385, 1948 Edition, had been committed by George Robert Thompson and Sidney Steinberg on or before June 20, 1951, did receive, relieve, comfort, and assist the said offender in order to hinder and prevent his apprehension, trial and punishment." Steinberg was charged with committing the same offense with respect to Thompson.

It is conceded that the George Robert Thompson mentioned in the complaints here is the Robert G. Thompson who was a defendant in the widely publicized case of United States v. Dennis, wherein eleven persons alleged to be communists were charged, tried and convicted of a conspiracy in violation of the Smith Act in the Southern District of New York. After sentence and pending appeal the defendant Thompson was at large on bail of $20,000. The judgment of conviction was affirmed. 2 Cir., 183 F.2d 201, Id., 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. It is further conceded that before June 20, 1951, after affirmance and while on bail Thompson took flight and was not apprehended until August 27, 1953, the time of arrest of these defendants, at which time all of these defendants, except Conroy, were in the presence of and with Thompson.

In support of their respective motions each of the defendants has filed an affidavit[4] setting forth the facts upon which reduction of bail is sought. They all have facts in common in that they were arrested and taken into custody on August 27, 1953, by agents of the Federal Bureau of Investigation in the County of Tuolumne, State of California, with the exception of Conroy, who was arrested and taken into custody in the County of San Joaquin, State of California; bail was fixed in the sum of $35,000 for all defendants; all are now in the custody of the United States Marshal at San Francisco and are unable to furnish bail in the sum fixed; all contend that the bail fixed is excessive, in violation of the Eighth Amendment to the Constitution of the United States, and amounts to a denial of bail in violation of the Eighth and Fifth Amendments to the Constitution of the United States; all state that he or she intends in good faith to remain within the jurisdiction of this Court at all times required by this Court and will at all times make himself or herself amenable to the orders of this Court; none has any intention of fleeing from the jurisdiction of this Court; and all believe themselves to be not guilty of the offense charged.

Each defendant has also stated further facts concerning his or her personal background, financial condition and family sta-

2. 18 U.S.C. § 10, 1946 Edition, and 18 U.S. C. § 2385, 1948 Edition.

3. "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

"Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by death, the accessory shall be imprisoned not more than ten years."

4. The manner of verification of the purported affidavit in each case might well be challenged so as to destroy its validity as a sworn statement. In effect each defendant has made a signed, unsworn and unverified statement. However, counsel before whom the statement was signed has acknowledged that the signature affixed to the statement is the signature of the particular defendant, and that the statement was executed by said person. In any event no point was made by the government after the matter was called to the attention of counsel for the government in open court and counsel for the defendants offered to correct any defect by proper verification. The statements will be treated, for the purposes of this hearing, as if they were properly verified and sworn affidavits.

tus. Shirley Keith Kremen, charged as Mrs. Shirley Keith Kremen, also known as Mrs. Lee Kaplan, states:

"A. I am a native born citizen of the United States, born December 29, 1931, in Chicago, Illinois. I have lived all my life in the United States.

"B. I am married to Erwin Kremen. We have no children. I was married April 20, 1951.

"C. My husband has been a factory worker and has earned in the neighborhood of $50 a week. I have worked as a factory worker in paper box factories particularly for about two years in 1951–1952, at which time I earned about $35 a week.

"D. I went to public school in Chicago and finished high school in Los Angeles County, and had one year at Los Angeles City College.

"E. My parents are living and have been residing in Los Angeles since April, 1944.

"F. My husband and I have no real estate, and the joint assets of both of us, together with such money as we could raise from sale or other disposition of personal belongings, would come to not more than $100 or $200.

"G. I have never before been arrested or charged with any crime or convicted thereof.

"H. I suffer from a physical condition for which in June or July, 1953, I consulted Dr. Garetz in San Jose, California. He advised me that I have an ovarian cyst and that it is in need of operative surgery."

Sidney Steinberg, charged as Sidney Steinberg, states:

"A. I was born on September 16, 1914, in Lithuania, and came to the United States on April 1, 1930. I became a citizen of the United States by naturalization in New York City in the year 1937.

"B. After arriving in the United States, I lived two years at Wooster, Massachusetts. Then for about ten years I lived in New York, for seven years in New Jersey, and thereafter in New York City. New York City has been my legal residence for the past five years or more.

"C. I am married and have two children, aged 7 and 13 years respectively, and they constitute my family, living at my legal residence in New York City.

"D. Both of my parents are living, and have for many years resided in Wooster, Massachusetts.

"E. I am possessed of no real estate, and the joint assets of my wife and myself, together with such money as we could raise from sale or other disposition of personal belongings, would come to not more than $1,000.

"F. Since 1913 I have worked at odd jobs. From 1931 to 1941 I worked as a meat cutter in New York, earning varying amounts not exceeding $60 per week. In 1941 I began to engage in political work, exercising administrative and executive duties.

"G. I was once arrested in 1931 in Lawrence, Massachusetts, during the course of a strike. I do not recall the details. My recollection is that I was convicted of a misdemeanor, the exact nature of which I do not recall, except that it had to do with union activities. I served several days in jail. When the strike was over, I was released. There have been a few occasions when I have paid minor traffic fines. Outside of the foregoing, I have no police record and have never been otherwise arrested, charged, or convicted of crime.

"H. Since childhood I have had and still have a heart condition, which from time to time has required, and has received, medical attention.

"I. My earnings have always been of an average character comparable to the averge earnings of a working-man, and have never exceeded $55 to $60 per week for the past five years."

Steinberg's statement in paragraph G to the effect that he has never been otherwise arrested, charged or convicted of crime is erroneous and inaccurate to the extent that he has been charged with a crime, to wit, a violation of the Smith Act, by an indictment returned against him in the Southern District of New York on June 20, 1951, and a warrant for his ar-

rest, issued on the indictment, has been outstanding since June 20, 1951.

Janet Conroy, charged as Janet Conroy, states:

"A. I was born in Fort Smith, Northwest Territory, Canada, on September 12, 1911, and came to the United States as a child, and in 1940 or 1941 I became a citizen of the United States.

"B. I am married and have two children, one child who is grown and married and another who lives at home.

"C. For more than five years last past, and until a few months ago, I lived in Denver, Colorado, where I was gainfully employed from time to time. I depended upon my husband for support. He is a construction and factory worker and earns an average income of about $45 to $50 per week.

"D. Neither my husband nor I is possessed of any real estate, and the joint assets of both of us, together with such money as we could raise from sale or other disposition of personal belongings, would come to not more than $200 or $300.

"E. I have never been convicted of any crime, but I was arrested and charged with contempt of court, and this matter was taken to the United States Supreme Court, and it was there held that I was not guilty of contempt of court.

"F. For some years I have had an ovarian cyst condition; one ovary was removed sometime ago. Over the past few years I have had occasion to consult doctors and receive treatment, hormones and surgery. I was advised a few months ago that there is a possibility of needing further surgery and that there is the possibility of a cancerous condition. I was told that medical attention and treatment would be advisable.

"G. At the time I was arrested, and for about two months before that, I had been working at San Jose as a typist and dictaphone operator, and was earning approximately $50 per week."

The statement made in paragraph E requires amplification since her counsel has stated in open court, and the government has not denied, that the defendant here charged under the name, Janet Conroy, is the same person who was the subject of contempt proceedings before the United States District Court for the District of Colorado under the name of Patricia Blau. See Blau v. United States, 10 Cir., 180 F.2d 103, Id., 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 110. Her counsel further states, and it is undenied, that bail was there fixed in the sum of $2,500, and she at all times responded to the orders of the court.

Carl Edwin Ross, charged as Carl Rasi, also known as Carl Ross, states:

"A. I am a native born citizen of the United States, born July 22, 1913, in Hancock, Michigan. I have lived all my life in the United States. Shortly after my birth, my family moved to Superior, Wisconsin, where we lived for eighteen years; there I attended the public schools and graduated from high school in 1931.

"From approximately 1934 to 1937 I lived in the Twin Cities, Minneapolis and St. Paul, Minnesota. For a period of approximately nine years thereafter, I lived in New York. Around 1946, I returned to Minneapolis, and that city has been my home and legal residence ever since.

"B. I am married and have a daughter aged seven years. My wife and daughter live in a home which we rent in the city of Minneapolis.

"C. I have one parent alive, my mother, Hilda Rasi, who has lived for 39 years in Superior, Wisconsin.

"D. I am possessed of no real estate, and the joint assets of my wife and myself, together with such money as we could raise from sale or other disposition of personal belongings, would come to not more than $1,000.

"E. Most of my adult life I have spent in political work, exercising administrative and executive duties.

"F. I have never before been arrested or charged with crime or convicted thereof, and so far as I can recall, the only time I have been held for any criminal charge was in connection with a minor traffic offense, involving a $10 fine.

"G. Although I have performed physical labor from time to time, and although my general condition of health is good, I have

difficulties resulting from a condition of infantile paralysis which I suffered when I was eighteen years old, and which caused me to be bedridden for nearly one year. I made a substantial recovery, but certain after-effects remain.

"H. My earnings have always been of a modest character, comparable to the average earnings of a working man, and have never exceeded $55.00 per week for the past five years."

Samuel I. Coleman, charged as Sam Coleman, states:

"A. I am a native born citizen of the United States, born April 20, 1911, in New York City. I have lived all my life in New York City, except for approximately 3½ years in Buffalo, New York.

"B. I am a graduate of the public schools of New York City, of DeWitt Clinton High School in that city, and am a graduate of Columbia University in that city, having received Bachelors and Masters degrees in Philosophy.

"C. I have earned my living in a variety of occupations. In 1934 and 1935 I was on the teaching staff of Columbia University. Since that time I have engaged in warehouse work, office work, factory employment, and about ten years ago I commenced to devote myself to political work, exercising administrative and executive duties.

"D. I am married and have two minor children, a son aged 9 and a daughter aged 7. My wife and children have been living at the same address in New York City for the past four years or so. New York City has been my home and legal residence for many years.

"E. During the last five years I have had average earnings not to exceed $75. per week. My wife is also employed; she is a public opinion poll taker, and has been employed for approximately three years in that work, and earns in the neighborhood of $250 to $300 per month.

"F. I am possessed of no real estate, and the joint assets of my wife and myself, together with such money as we could raise from the sale or other disposition of personal belongings, would come to not more than approximately $2,000, or less.

"G. I have never been arrested or charged with crime or convicted thereof."

The subject of the right to bail before conviction and the manner of the fixing thereof recently has come under the scrutiny of both the Supreme Court and the Court of Appeals in this Circuit. See Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; Spector v. United States, 9 Cir., 193 F.2d 1002. These cases discuss the standards to be applied and the procedure to be followed in fixing bail under Rule 46 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ Defendants' motions to reduce are the proper procedures to challenge the bail fixed by the Commissioners. In Stack v. Boyle, supra, the Supreme Court said, 342 U.S. at page 6, 72 S.Ct. at page 4, 96 L.Ed. 3:

"The proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion. Petitioners' motion to reduce bail did not merely invoke the discretion of the District Court setting bail within a zone of reasonableness, but challenged the bail as violating statutory and constitutional standards. As there is no discretion to refuse to reduce excessive bail, the order denying the motion to reduce bail is appealable as a 'final decision' of the District Court under 28 U.S.C. (Supp. IV) § 1291".

While the bail in that case was fixed after the return of indictments and the bail here has been fixed on the filing of complaints before Commissioners and before indictment, there is no distinction in principle between the two situations.

■ The standards laid down have the effect of limiting bail to the amount normally fixed for offenses carrying like penalties in the absence of showing of special circumstances. In Spector v. United States, supra, the Court said, 193 F.2d at page 1004:

"The short of the matter is that the trial judge has failed to follow the Supreme Court decision in the Stack case, 72 S.Ct.

at page 4. The holding was that in the cases there dealt with bail should not be higher than that normally fixed for offenses carrying like penalties, in the absence of showing of special circumstances requiring larger bail. No such special circumstances were shown, yet bail was again fixed at $50,000, the amount which the Supreme Court said 'cannot be squared with the statutory and constitutional standards for admission to bail.' "

It is to be noted that the Court of Appeals was there speaking of cases arising out of Smith Act violations in the Southern District of California, and that the Court of Appeals there ordered the District Court to reduce bail from $50,000, fixed in the District Court for all defendants, to $10,000 for some defendants and $5,000 for others.[5] In view of the order made and the language used, it is crystal clear that the District Courts in this Circuit have no discretion to fix bail in Smith Act cases except within the limits already established as the norm by the Court of Appeals absent a showing of special circumstances requiring the fixing of higher bail.

The questions to be determined in this light are: (1) Is the offense charged in this case to be classified with the Smith Act cases for the purpose of determining the norm in fixing bail, and (2) are there any special circumstances requiring the fixing of higher bail than the norm for Smith Act cases?

The complaints in the cases before

this Court charge a violation of 18 U.S.C. § 3 which makes the person charged an accessory after the fact of the offense committed by the person who is being received, relieved, comforted or assisted. Here Thompson was a convicted Smith Act violator and Steinberg was charged with a Smith Act violation at the time the defendants "did receive, relieve comfort and assist" them. Section 3 further makes the penalty one-half of the maximum which could be assessed against the principal. Because the defendants could only be found to be accessories to the offense of violating the Smith Act and because their penalties could only be fixed at one-half the penalty imposed under the Smith Act, the norm for fixing bail in Smith Act cases should apply.[6] The norm in this Circuit must therefore be accepted to be not in excess of $10,000 as fixed by the Court of Appeals.

It is urged that under Rule 46(c) of the Federal Rules of Criminal Procedure [7] the circumstances of the offense should require higher bail than the bail fixed for the principal. These circumstances are that the defendants were charged with receiving, relieving, comforting and assisting a convicted communist violator of the Smith Act and a person charged with being a communist violator of the Smith Act, and that the defendants, except Conroy, were found in the company of known fugitives from justice while they were fugitives. The fact that Congress has fixed a lesser penalty for the accessory answers this contention. Stack v. Boyle, supra, and Spector v. U. S.,

5. For reports of those cases see U. S. v. Schneiderman, D. C., 102 F.Supp. 52; U. S. v. Spector, D.C., 102 F.Supp. 75; Stack v. U. S., 9 Cir., 193 F.2d 875; Spector v. U. S., 9 Cir., 193 F.2d 1002; Stack v. Boyle, 9 Cir., 192 F.2d 56; and Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3.

6. In Stack v. U. S., 9 Cir., 193 F.2d 875, the District Court was ordered to fix bail at $10,000 for seven Smith Act defendants, and at $5,000 for five others. In Spector v. U. S., 9 Cir., 193 F.2d 1002, the District Court was ordered to fix bail for three more Smith Act defendants at $5,000. It has been agreed by the parties here that the Court may take judicial notice that pre-conviction bail for each

Smith Act defendant charged in the United States District Court for the District of Hawaii was fixed at $7,500, and bail for all Smith Act defendants except one who were indicted in the Western District of Washington, Northern Division, was fixed at $5,000 and the one was fixed at $10,000.

7. "If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the commissioner or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant."

supra, require that bail be fixed in an amount usually imposed for offenses with like penalties. The recitation of facts in each of the affidavits and as stipulated by counsel shows no special circumstances except in the case of Steinberg. This defendant was at the time of his arrest a fugitive from justice,[8] having at least avoided arrest under the warrant issued on the Smith Act indictment in the Southern District of New York on June 20, 1951, until his arrest in this District on August 27, 1953. By his conduct he has shown that he is no respecter of the processes of the law or of orders of court made pursuant to law. His bail of $35,000 should not be reduced.

The defendant Janet Conroy has had occasion to have been at large on bail previously. On that occasion she responded to all orders of the court. She is married and has two children. Her bail should therefore be reduced to and fixed at $5,000.

The defendant Shirley Keith Kremen is a resident of the State of California; her parents reside in the State but out of this District; she is married but has no children. Her bail should therefore be reduced to and fixed at $7,500.

The defendant Carl Rasi, also known as Carl Ross, is a nonresident of California and has a family in Minnesota. His bail should therefore be reduced to and fixed in the sum of $10,000.

The defendant Sam Coleman is a resident of the State of New York. He is married and has two children. His bail should therefore be reduced to and fixed in the sum of $10,000.

It is therefore ordered, adjudged and decreed:

1. That the order of United States Commissioner Joseph Karesh fixing bail in the case of United States of America v. Mrs. Shirley Keith Kremen, also known as Mrs. Lee Kaplan, No. 7691, in the sum of $35,000 be and the same is hereby vacated and set aside, and bail for this defendant is fixed in the sum of $7,500.

2. That the order of United States Commissioner Joseph Karesh fixing bail in the case of United States of America v. Carl Rasi, also known as Carl Ross, No. 7694, in the sum of $35,000 be and the same is hereby vacated and set aside, and bail for this defendant is fixed in the sum of $10,000.

3. That the order of United States Commissioner Joseph Karesh fixing bail in the case of United States of America v. Sam Coleman, No. 7695, in the sum of $35,000 be and the same is thereby vacated and set aside, and bail for this defendant is fixed in the sum of $10,000.

4. That the order of United States Commissioner Joseph Karesh fixing bail in the case of United States of America v. Sidney Steinberg, No. 7692, in the sum of $35,000 is affirmed, and bail is hereby fixed for the defendant Steinberg in the sum of $35,000.

5. That the order of United States Commissioner Norma Hammond fixing bail in the case of United States of America v. Janet Conroy, No. 7693, in the sum of $35,000 be and the same is hereby vacated and set aside, and bail for this defendant is fixed in the sum of $5,000.

It is further ordered that the bail heretofore fixed by United States Commissioner Joseph Karesh on the removal of Sidney Steinberg in the sum of $100,000 be and the same is hereby vacated and set aside, and bail for defendant Steinberg is hereby fixed in the sum of $1,000 without prejudice to the United States to move to increase bail upon a showing of change of circumstances.

8. The Court does not consider the question of the application of 18 U.S.C. §§ 1071 and 1073, but see Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735; Ex parte Morgan, D.C. S.D.Cal., 78 F.Supp. 756, 758.